# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN EDWARDS, Individually and on Behalf of All Others Similarly Situated, <br><br>                 Plaintiffs, <br>     v. <br><br> SATCON TECHNOLOGY CORPORATION, CHARLES S. RHOADES and DONALD R. PECK, <br><br>                 Defendants. | Civil Action No. 11 Civ. 11270 (DPW) |
| LARRY ZIEGLER, Individually and on Behalf of All Others Similarly Situated, <br><br>                 Plaintiffs, <br>     v. <br><br> SATCON TECHNOLOGY CORPORATION, CHARLES S. RHOADES and DONALD R. PECK, <br><br>                 Defendants. | Civil Action No. 11 Civ. 11286 (DPW) |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE SATCON INVESTOR GROUP'S MOTION FOR
## (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND
## (3) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ......................................................................................................................... 5

    I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES............... 5

    II.   THE SATCON INVESTOR GROUP SHOULD BE APPOINTED LEAD
          PLAINTIFF FOR THE CLASS................................................................................. 7

          A.    The PSLRA's Provisions Concerning The Appointment Of A Lead
                Plaintiff ............................................................................................................ 7

          B.    Under The PSLRA, The Satcon Investor Group Should Be
                Appointed Lead Plaintiff............................................................................ 8

                1.    The Satcon Investor Group Filed A Timely Motion....................... 8

                2.    The Satcon Investor Group Has The Largest Financial
                      Interest in the Relief Sought by the Class...................................... 9

                3.    The Satcon Investor Group Meets Rule 23's Typicality and
                      Adequacy Requirements .............................................................. 10

    III.   THE COURT SHOULD APPROVE THE SATCON INVESTOR
          GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL........... 12

CONCLUSION...................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Barnet v. Elan Corp.*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ........................................................................11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................10

*Coopersmith v. Lehman Bros.*,
   344 F. Supp. 2d 783 (D. Mass. 2004) ................................................................7, 8

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) ..........................................................................8

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*,
   354 F. Supp. 2d 18 (D. Mass. 2000) ......................................................................6

*In re General Electric Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ..............6, 9

*In re Lernout & Hauspie Sec. Litig.*,
   138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................10, 11, 12

*In re Nice Sys., Ltd. Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999) ................................................................................8

*In re Orion Sec. Litig.*,
   No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ..................11

*In re Tyco Int'l, Ltd. Secs. Litig.*,
   MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390 (D.N.H. Aug. 17, 2000) ..........9, 12

*Lax v. First Merchants Acceptance Corp.*,
   No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................8

*Leech v. Brooks Automation, Inc.*,
   C.A. No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153 (D. Mass. Dec. 13, 2006) ..... *passim*

STATUTES

15 U.S.C. 78u-4(a)(3)(B)(ii) ................................................................................1, 5

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I) ........................................................................7

15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...........................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii) .....................................................................................7, 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(v) ......................................................................................2, 12

Private Securities Litigation Reform Act............................................................... *passim*

Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C.
   § 78u-4(a)(3)(B).....................................................................................................1, 10

Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ................................ *passim*

OTHER AUTHORITIES

Federal Rule of Civil Procedure 42(a) ...........................................................................2, 6

Rule 23 .....................................................................................................2, 8, 10,12

Movants Stanley Cooper, Timothy Montgomery and Rafeek Rohoman (the "Satcon Investor Group"), on behalf of themselves and the Class defined herein, respectfully submit this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of the Satcon Investor Group's motion for the entry of an order:  (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing the Satcon Investor Group as Lead Plaintiff for the Actions; and (3) approving the Satcon Investor Group's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District are two securities class actions (the "Actions")[1] brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of defendants' misconduct in connection with their transactions in Satcon Technology Corporation ("Satcon" or the "Company") securities during the period from March 4, 2010 and July 5, 2011, inclusive (the "Class Period").  In connection therewith, various movants seek to: (1) consolidate all related actions; (2) be appointed lead plaintiff; and (3) approve their selection for lead counsel.

As an initial matter, the Court must decide whether to consolidate the Actions.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  On this threshold question, little doubt exists.  The Actions assert claims for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934

---

[1]   The Actions are as follows:  (1) *Edwards v. Satcon Technology Corporation et al*, No. 1:11-cv-11270 (DPW); and (2) *Ziegler v. Satcon Technology Corporation et al*, No. 1:11-cv-11286 (DPW).  Plaintiff Thomas Burkett has also brought an action in this Court derivatively on behalf of Nominal Defendant Satcon against certain current and/or former members of the Company's Board of Directors (the "Board") for the Board's breaches of fiduciary duties and unjust enrichment during the same period at the Actions.  *See Burkett v. Rhoades et al*, No. 1:11-cv-11379 (DPW).

("Exchange Act"), and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  Furthermore, the Actions allege substantially the same misconduct by Satcon and two of the Company's officers (Chief Executive Officer and President Charles S. Rhoades ("Rhoades"), and Chief Financial Officer, Executive Vice President and Treasurer Donald R. Peck ("Peck")).  Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

With respect to the appointment of a lead plaintiff to oversee the consolidated Actions, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and who otherwise satisfies Rule 23's typicality and adequacy requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $143,294.91, the Satcon Investor Group, to the best of counsel's knowledge, possesses the largest financial interest in the litigation of any movant.  Accordingly, the Satcon Investor Group is the presumptive Lead Plaintiff.  The Satcon Investor Group also satisfies Rule 23's typicality and adequacy requirements.  The Satcon Investor Group's claims are typical of the Class's claims because its members suffered losses in their Satcon investments as a result of the defendants' false and misleading statements.  Further, the Satcon Investor Group has no conflict with the Class and will adequately protect the Class's interests given the Satcon Investor Group's significant stake in the litigation and its selection of competent counsel.

Lastly, if appointed Lead Plaintiff, the Satcon Investor Group is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Satcon Investor Group has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an

appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, the Satcon Investor Group's motion should be granted in its entirety.

## FACTUAL BACKGROUND

Satcon describes itself as a "leading provider of utility-grade power conversion solutions for the renewable energy market, enabling the industry's most advanced, reliable, and proven clean energy alternatives.  For more than ten years, Satcon has designed and delivered advanced power conversion products that enable large-scale producers of renewable energy to convert the clean energy they produce into grid-connected efficient and reliable power."

During the Class Period, defendants materially misled the investing public, thereby inflating the price of Satcon common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements not false and misleading.  The statements certain defendants made during the Class Period are alleged to be materially false and misleading when made because defendants misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:  (a) that the Company was experiencing a decrease in sales of its inverter systems; (b) that the Company's European market was performing below internal expectations due to changes in government incentives for solar energy; (c) that the Company failed to properly account for its inventory; and (d) as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects.

Specifically, on February 22, 2011, Defendants initiated the first of a series of disclosures that would slowly reveal some of the issues and challenges negatively affecting the Company's current and future financial prospects.  In a press release issued that day and filed with the SEC,

Satcon announced its financial results for the fourth quarter and year-end of 2010.  Despite record highs in terms of revenues, Defendant Rhoades briefly alluded to some of the Company's percolating problems in revealing that revenues would be down in the first half of 2011 due to "some seasonal effect coming from the European region and the North American commercial rooftop business."  In response to the news, the price of Satcon fell nearly 30%, closing at $3.54 per share on a day marked by heavy trading volume.

On April 7, 2011, Satcon announced its preliminary financial results for the first quarter of 2011.  Defendant Rhoades stated that revenues were expected to fall below the forecasted range, and, by way of explanation for the unmet previously announced targets, stated that customers had been delaying delivery of the Company's inverter systems for later in the year and also cited delays in the Company's construction projects.  In reaction to this news, Satcon stock price fell $0.23 cents per share and closed at $3.29 per share.

On April 27, 2011, Satcon issued a press release announcing its financial results for the first quarter of 2011.  The Company expanded slightly upon the scope of its European problems, in citing below expectation levels of business in Europe due to changes and uncertainty in renewable energy policies for several European Countries.  Upon dissemination of this news, stock price fell $0.19 per share, closing at $3.00 per share.

Finally, on July 5, 2011, Satcon issued a press release announcing its preliminary financial results for the second quarter of 2011 for the period ended June 30, 2011.  For the quarter, the Company expected revenue to be between $45 million and $47 million – below the previously announced guidance of $50 million to $60 million – due to "changes in government incentives in the company's higher margin markets in Europe as well as delays on a few projects that have been pushed into the third quarter."  Moreover, the Company announced that its gross

margin estimate would be "between 7% and 11%, below the company's previously announced guidance of 17% to 20%" due to the "lower revenue range, and the effects of the slowdown in the European market. Additionally, the company incurred one-time expenses relating to the revaluation of material due to lower component costs, an excess inventory provision, and a non-recurring expense associated with a major project in North America. This project, along with an increase in accounts receivable reserves, will also impact the company's Q2 operating expenses." Lastly, the Company announced that it was reducing its workforce by 15%. In reaction to this announcement, the price of Satcon stock fell $0.59 per share, or 23%, to close at $1.95 per share, on heavy trading volume.

As a result of these materially false and misleading statements and failures to disclose, Satcon common stock traded at artificially inflated prices during the Class Period. As a result, Movant and the Class purchased or otherwise acquired Satcon common stock relying upon the integrity of the market price of Satcon common stock and market information relating to Satcon and have been damaged thereby. After the above revelations seeped into the market, the Company's shares were hammered by massive sales that sent Satcon's stock price down from its Class Period high of $5.49 per share on January 18, 2011. The Actions are the only chance Class members will have to receive compensation for being defrauded, and the Satcon Investor Group seeks to ensure that investors receive the maximum possible recovery.

## ARGUMENT

## I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u-4(a)(3)(B)(ii). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA

advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Leech v. Brooks Automation, Inc.*, C.A. No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153, at *13 (D. Mass. Dec. 13, 2006) (consolidating securities class actions); *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 22 (D. Mass. 2000) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re General Electric Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of facts *and* law.  The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by Satcon and two of the Company's officers.  The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements and omissions that artificially inflated Satcon's stock price and damaged the Class when the truth emerged and RIM's stock price crashed.  Consolidation of the Actions is therefore appropriate. *See CareMatrix Corp.*, 354 F. Supp. 2d at 22 (finding consolidation appropriate where complaints contained identical claims and involved common questions of law or fact); *In re General Electric*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary cost to the parties.").

## II.     THE SATCON INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.     The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I).  It provides that within 20 days of the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff.  *See Coopersmith v. Lehman Bros.*, 344 F. Supp. 2d 783, 789 (D. Mass. 2004) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members."  Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa)     has either filed the complaint or made a motion in response to a notice (published by a complainant);
>
> (bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Coopersmith*, 344 F. Supp. 2d at 789 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff"); *Leech*, 2006 U.S. Dist. LEXIS 90153, at *3-4 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class

member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Coopersmith*, 344 F. Supp. 2d at 789; *Leech*, 2006 U.S. Dist. LEXIS 90153, at *4.

**B.      Under The PSLRA, The Satcon Investor Group Should Be Appointed Lead Plaintiff**

As discussed below, the Satcon Investor Group should be appointed lead plaintiff because all of the PSLRA's procedural hurdles have been satisfied, the Satcon Investor Group holds the largest financial interest of any movant, and the Satcon Investor Group otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.      The Satcon Investor Group Filed A Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Allan Edwards published notice of the lead plaintiff deadline via *Business Wire* on July 19, 2011.[2]   *See* Hess-Mahan Decl., Ex. A.[3]   Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before September 19, 2011).   *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).   Thus, the Satcon Investor Group's motion was timely filed.   Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, the Satcon Investor Group timely signed and submitted certifications with

---

[2]   Publication by *Business Wire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service."   *See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

[3]   All references to Exhibits are references to the exhibits annexed to the Declaration of Theodore M. Hess-Mahan, dated September 19, 2011, filed in support hereof.

their complaint, identifying all of their relevant Satcon trades during the Class Period, and detailing the Satcon Investor Group's suitability to serve as Lead Plaintiff in this case. *See* Hess-Mahan Decl., Ex. B – D.  The PSLRA's procedural requirements have therefore been met.

### 2. The Satcon Investor Group Has The Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts often look to four factors in the inquiry:  (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Leech*, 2006 U.S. Dist. LEXIS 90153, at *11-12.  Courts typically focus on the last of the four factors:  the approximate loss suffered by the movant. *See, e.g. Leech*, 2006 U.S. Dist. LEXIS 90153, at *11-12; *In re Tyco Int'l, Ltd. Secs. Litig.*, MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *19-20 (D.N.H. Aug. 17, 2000); *see also In re General Electric Sec. Litig.*, 2009 U.S. Dist. LEXIS 69133, at *11 (citation omitted).

Overall, the Satcon Investor Group collectively purchased 108,938 shares (and 50,438 net shares) of Satcon common stock during the Class Period, expended $127,585.05 net funds, and suffered losses of $143,294.91,[4] when calculated using either a first in, first out ("FIFO") or last

---

[4]   The Satcon Investor Group's losses are illustrated in the table below.  Because movants Montgomery and Rohoman continue to hold their Satcon shares, the sales for those two movants are calculated based on Satcon's average closing price of $1.53 per share from July 6, 2011 through September 16, 2011.

in, first out ("LIFO") methodology.[5]  *See* Hess-Mahan Decl., Exs. E – M.  The Satcon Investor Group is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.  Accordingly, the Satcon Investor Group is the presumptive Lead Plaintiff.

> **3.**    **The Satcon Investor Group Meets Rule 23's Typicality and Adequacy Requirements**

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff make a preliminary showing that it satisfies Rule 23's requirements to be certified as a class representative.   15 U.S.C.  § 78u-4(a)(3)(B).   When assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant.  *See, e.g.*, *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (citing *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 407 n.8 (D. Minn. 1998); *In re Tyco*, 2000 U.S. Dist. LEXIS 13390, at *20 n.10); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).

| Plaintiff | Shares Purchased | Shares Sold | Losses |
|---|---|---|---|
| **Stanley Cooper** | 30,000 (at $3.36)<br>28,500 (at $3.40) | 58,500 (at $2.3163) | $62,202.45 |
| **Timothy Montgomery** | 16,000 (at $3.90) | 16,000 (at $1.53) | $40,800.00 |
| **Rafeek Rohoman** | 34,438 (at $2.70) | 34,438 (at $1.53) | $40,292.46 |
|  |  | **TOTAL:** | **$143,294.91** |

---

[5]    These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiffs may present at trial.

Typicality requires that the named plaintiffs' claims arise from the "same events or course of conduct" and involve the same legal theory as do the claims of the rest of the class. *In re Lernout*, 138 F. Supp. 2d at 46 (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)).  For the plaintiff to meet this burden, it need not show identical claims. *In re Lernout*, 138 F. Supp. 2d at 46 (citing *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997)); *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, '[t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.'") (internal quotations and citation omitted).

The Satcon Investor Group's claims are clearly typical of the Class's claims.  The Satcon Investor Group invested in Satcon common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against Satcon and its officers and under the federal securities laws.  Because the factual and legal bases of the Satcon Investor Group's claims are similar, if not identical, to those of the Class's claims, the Satcon Investor Group necessarily satisfies the typicality requirement.  *See In re Lernout*, 138 F. Supp. 2d at 46 (investor group typical where allegations involved defendant's dissemination of false and misleading information concerning various financial statements and strategic alliances in Korea which inflated defendant's stock price); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (investor group typical where it asserted that it "purchased [company's] securities during the class period and was injured by false and misleading representations made by defendants in violation of the [Exchange] Act").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class."  To meet the adequacy requirement, plaintiffs must demonstrate that they have common interests, an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation.  *In re Lernout*, 138 F. Supp. 2d at 46 (citing *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991)); *see also In re Tyco*, 2000 U.S. Dist. LEXIS 13390, at *30-31 n.18 ("The adequacy requirement also calls for an inquiry into whether the proposed representative is represented by qualified, experienced counsel capable of vigorously prosecuting the proposed litigation.") (Citations omitted).

As evidenced by the representations in the Satcon Investor Group's certifications, the group's interests are perfectly aligned with, and by no means antagonistic to, the interests of the Class.  Moreover, the Satcon Investor Group has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is well regarded for its experience, knowledge, and ability to conduct complex securities class actions on behalf of plaintiffs.  *See*  Hess-Mahan Decl., Ex. N.  Consequently, the Satcon Investor Group is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, the Satcon Investor Group respectfully submits that it should be appointed Lead Plaintiff for the consolidated Actions.

## III.    THE COURT SHOULD APPROVE THE SATCON INVESTOR GROUP'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval.  The Satcon Investor Group has selected the Faruqi Firm to be Lead Counsel for the Class.  As reflected in the firm's resume, the

Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Hess-Mahan Decl., Ex. N. Accordingly, the Faruqi Firm is amply qualified to represent the Class, and the Satcon Investor Group requests that the Court approve its selection of the Faruqi Firm as Lead Counsel for the putative class. *See Leech*, 2006 U.S. Dist. LEXIS 90153, at *12-13.

## CONCLUSION

For the foregoing reasons, the Satcon Investor Group respectfully requests that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint the Satcon Investor Group as Lead Plaintiff for the consolidated Actions; (3) approve the Satcon Investor Group's selection of the Faruqi Firm as Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  September 19, 2011

Respectfully submitted,

By: */s/ Theodore M. Hess-Mahan*
Theodore M. Hess-Mahan, BBO #557109
thess-mahan@hutchingsbarsamian.com
**HUTCHINGS, BARSAMIAN,**
**MANDELCORN & ZEYTOONIAN, LLP**
110 Cedar Street, Suite 250
Wellesley Hills, MA  02481
Tel.:  (781) 431-2231
Fax:  (781) 431-8726

Antonio Vozzolo
Richard W. Gonnello
Francis P. McConville
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com
rgonnello@faruqilaw.com
fmcconville@faruqilaw.com

*Attorneys for the Satcon Investor Group*